418 So.2d 1389 (1982)
Cecil STEWART
v.
CITY OF NEW ORLEANS, New Orleans Police Department, Travelers Insurance Company, and Charity Hospital of Louisiana At New Orleans, a Division of/and Louisiana Health and Human Resources Administration, and ABC Insurance Company.
No. 12516.
Court of Appeal of Louisiana, Fourth Circuit.
June 8, 1982.
Rehearing Denied September 24, 1982.
*1390 Walter F. Gemeinhard, John P. Keegan, New Orleans, for plaintiff-appellant.
H.M. Westholz, Jr., Staff Atty., Louisiana Dept. of Health and Human Resources, New Orleans, for defendants-appellees.
Before GARRISON, AUGUSTINE and WARD, JJ.
GARRISON, Judge.
This is an appeal from a judgment of the district court, dismissing plaintiff's suit against Charity Hospital and the Louisiana Health and Human Resources Administration. Defendants, Travelers Insurance Co., the City of New Orleans, and the New Orleans Police Department (hereinafter N.O.P.D.), reached a settlement with plaintiff in plaintiff's case against the City prior to rendition of judgment. From the judgment of dismissal, which we affirm, plaintiff appeals.
On appeal, plaintiff argues that the trial court erred in failing to apply the doctrine of res ipsa loquitur as applied in Holloway v. Southern Baptist Hospital, 367 So.2d 871 (La. App. 4th Cir., 1978) or, alternatively, that the trial court erred in failing to provide compensation for the aggravation of a prior existing condition.
The operative facts are as follows:
On November 12, 1974, plaintiff became extremely disoriented, such that his mother notified N.O.P.D. At 4:35 a.m., he was taken into custody on charges of disturbing the peace and was subsequently placed in the House of Detention. Pursuant to a coroner's examination, plaintiff was diagnosed a paranoid schizophrenic and was committed to Charity Hospital. He was admitted to Charity at 9:15 a.m. on November 15. At 10:00 a.m. he was admitted to the psychiatric ward. Restraints had been placed on the plaintiff, including ankle restraints on his right leg. During his stay in Charity Hospital, the area of the right ankle restraint became gangrenous, resulting in the amputation of plaintiff's right leg. The amputation extended to above plaintiff's right knee.
Plaintiff argued that the restraints were improperly applied and excessively tight, resulting in the injury. Plaintiff further argues that he was severely beaten and physically abused while in custody.
At trial Dr. Bruce Iteld testified that the laboratory tests positively indicated that plaintiff had group A beta hemolytic streptococcus bacteria in his blood stream. The bacteria is introduced into the blood stream most commonly by the use of unclean needles and poor dental hygiene. At the time of plaintiff's confinement in Charity Hospital, the bacterial infection had already attacked plaintiff's musculature system, which indicated to Dr. Iteld that the bacterial infection had been in plaintiff's blood stream for some time and that it was introduced *1391 into his blood stream prior to his confinement. Plaintiff's leg had "track marks" of the type normally associated with drug addiction. Dr. Iteld further testified that plaintiff's sickle cell traits would aggravate the bacteriological condition. Plaintiff's leg was amputated due to a lack of blood flow or eschemia which resulted in the gangrene.
Dr. Larry Hollier, Assistant Professor of Vascular Surgery at L.S.U. Medical School, also treated the plaintiff. Dr. Hollier testified that plaintiff had a bacteriological infection harbored within the walls of the heart. Upon examination it was noted that plaintiff had an extraneous noise that could be heard with each heartbeat. He further had small hemorrhages present beneath the nails of his fingers and gradually developed spots on both feet. Dr. Hollier testified that these "splinter hemorrhages" are caused by clusters of small bacteria-laden blood clots which are then showered into the blood stream during the pumping action in the heart. Once in the blood stream, the clots then block small blood vessels, which in turn give rise to discoloration and black spots. Dr. Hollier further testified that plaintiff's "bruised" appearance was due to the discoloration caused by the splinter hemorrhages.
On appeal, the question to be addressed by this court is, whether upon a full and independent review of the evidence and testimony presented, can this court conclude that the trial judge was manifestly erroneous in his factual determinations. In the present case, we cannot conclude that the trial judge was manifestly erroneous. We find no evidence that plaintiff was either improperly restrained or physically abused. We are convinced that Charity Hospital provided creditable medical services and that the medical personnel did all that they could do to save plaintiff's leg and plaintiff's life.
For the reasons discussed, the judgment of the district court is affirmed.
AFFIRMED.